(*Superior Court of Cook County. In Chancery.*)

## Oak Park Trust & Savings Bank
### vs.
## Central Life Underwriting Association, et al.

(February 3, 1903.)

1. PAROL EVIDENCE—WRITTEN INSTRUMENTS.   While parol evidence is not admissible to contradict, change or modify a written instrument, the court may admit parol evidence to show the conditions environing the parties prior and at the time of the execution of the instrument, for the purpose of arriving at the intention of the parties.

2. DEPOSIT OF SECURITIES—TRANSFER TO BONA FIDE HOLDERS.   Where certain securities were transferred to an insurance company in exchange for certain shares of its stock, under a contract providing that such securities were to be returned to the depositor in case the insurance company failed to comply with certain provisions of the contract, it was held that the securities were sold and not loaned, and that as against a bona fide holder the depositor had no title.

3. CONTRACT—ILLEGAL PURPOSE—TRANSFER OF SECURITIES FOR.   Where certain securities were loaned to an insurance company under a contract, for the purpose of enabling it to deposit the same with the state, it was held that the contract was fraudulent and unlawful and the parties to it could not receive any countenance or assistance with respect thereto, from a court of equity.

Creditor's bill and cross-bill. Demurrer to cross-bill as secondly amended. Heard before Judge Jesse Holdom.

For statement of facts see opinion.

*George W. Plummer* and *Messrs. Stillman* and *Martyn,* for complainant in cross-bill.

*Jesse A. Baldwin, F. W. Pringle, Thomas A. Banning* and *Messrs. Paddock & Baker,* for defendants in cross-bill.

HOLDOM, J.:—

I am not going to agree with any suggestion or insinuation that may have been made, that the case has been too elaborately argued. The questions are very interesting and somewhat involved, and I have been diligently examining the briefs, and have no cause to complain of their being unduly prolix. The original bill in this cause is a creditor's bill based on two judgments against the Central Life Underwriting Association, obtained by complainant September 17th and 18th, 1902, for $1,426.59 and $3,358.81 respectively, executions thereunder having been returned *nulla bona.*

Hagins filed his cross-bill, claiming title to the securities now held by the defendant, the Western State Bank, to which defendants in cross-bill interposed special and general demurrers. The case is now before the court for decision on these demurrers.

The whole transaction is evidenced in writing. Nixon, as president, and Meyers, as secretary, of the Central Life Underwriting Association, joined in a written statement of its condition to Hagins, after which Hagins entered into a written contract with the Central Life Underwriting Association, under which securities amounting to $43,000 were delivered to it. On the construction of this contract depends mainly the solution of the correctness, or not, of Hagins' contention that the securities were not sold but loaned.

By the terms of this contract the association sells certain shares, not mentioning the number, of its stock to Hagins, and in payment therefor Hagins sells, assigns and transfers unto the association the securities in question.

By the terms of the writing, the association might, at its

option, repurchase its stock, "paying therefor either with the above named securities at their par value, or with other securities acceptable to said Hagins, equal to the amount of stock so purchased at par value, or by payment of the par value of said stock in cash." Then follow provisions in relation to payment of twelve per cent of the face value of securities until expiration of one year, etc.; or repurchase of the stock by the association, the association to have the privilege of paying seven-twelfths of such twelve per cent in coupon interest notes on securities "so sold and transferred," and Hagins agrees to accept the same. If the stock is, at the end of the year, paying a dividend of twelve per cent, then Hagins can not require the association to repurchase its stock; if not earning and paying such dividend, Hagins can require the association to repurchase its stock at its par value, paying for the same with the securities, or other securities satisfactory to Hagins, or in cash. Then follows the provision, "or in case of failure to pay the interest herein stipulated monthly on demand," Hagins "shall have the right to have said securities returned." William Penn Nixon and John E. Meyers entered into a written agreement on the foot of the contract by which, as officers of the association, in consideration of Hagins signing and entering into the contract, they personally obligated themselves that the securities should be returned, in case the association failed to comply with that condition of its contract.

According to the contention of cross-complainant, it was intended that these securities should be used by the association and transferred to others—put out of its reach and control—parted with beyond recovery. They were sold and transferred by the terms of the writing, and passed by actual delivery. It was a bargain and sale—stock of the association for Hagins' $43,000 of real estate paper. True it is that Hagins, failing to receive his twelve per cent in monthly installments during the year, had the right to a return of the securities, and that is the only condition under which he could demand their return. That right rested on the existent condition at the time of its attempted exercise, viz., that

the association had then in their possession or were then vested with the title so that they could return them. Failing this Hagins' right was unavailing. The allegations of the cross-bill affirmatively charge that the association does not own the securities; that they have been transferred to the Western State Bank.

I therefore hold that the securities, by the writing set out in the cross-bill, were sold to the association by Hagins; that as between him and the *bona fide* holders for value he has no claim or title.

The demurrers admit all the allegations of the cross-bill as amended, and for the purpose of this decision must be conceded their full purport and intendment. Grave charges of irregularities in this transaction are made, and the judgments on which the creditor's bill is founded are alleged to be collusive and fraudulent, all of which a party in interest might challenge, and invoke the aid of this court for such relief as his invested interest in the subject might warrant.

While parol evidence can not be received to contradict, change or modify a written instrument, yet under well settled legal principles the court may admit parol evidence as to the conditions environing the parties prior and at the time of executing the writing, not for the purpose of taking from, adding to, or reading anything not found there into the writing, but for the purpose of arriving at the intention of the parties at the time, enabling the court to intelligently construe the writing—in other words to place the court in the same position in which the parties were at the time, so that what operated upon their minds may likewise influence the judgment of the court, in arriving at a correct solution of that which the parties intended by the words which they used in writing. The averments of the amended cross-bill of matters resting in parol are not, for that reason, subject to the objections made by complainant.

Hagins also avers that the intention of the parties to this transaction was that the securities aggregating $43,000 should be used to obtain other securities of quality and value acceptable to the State Insurance Department of the State of.

Illinois, to receive as a deposit for and on behalf of the Marquette Life Insurance Company, to enable it to do a life insurance business in this state under the insurance laws thereof, the Marquette Life Insurance Company being controlled by certain officers of the Central Life Underwriting Association. The securities transferred by Hagins to the association consisted of mortgages on California real estate; these were, it is charged, to be exchanged for mortgages upon property in Illinois, to make them available for deposit with the insurance department, as required by the insurance law of this state. To accomplish this under the law, the mortgages so to be deposited with the insurance department of the state, must be so deposited under the representation that the same formed a part of the assets of the Marqutte Life Insurance Company, and could not be received by the department under any other condition.

If the contention of Hagins in this regard be true, the Marquette Life Insurance Company would not be the owners—the securities would simply be borrowed for the purpose of an attempt to deceive the insurance department of the state; for while, when once deposited, they could not be reclaimed by Hagins, yet at any time, on their surrender by the department to the Marquette Life Insurance Company, they would belong to Hagins as representing the securities which he had loaned. By this scheme the public would be led to believe that the Marquette Life Insurance Company owned the securities so deposited, and on the faith of such being the fact, would be led to transact business with it. Thus would an apparent glaring fraud be practiced upon the public and upon the insurance department of the state. If the facts as alleged were known to the insurance department, the securities would neither be received nor the Marquette Life Insurance Company licensed to transact a life insurance business in this state.

This is a compact abhorrent to a court of conscience, and can receive no countenance or assistance from this forum. However disappointed Hagins may be at the *denouement* of this transaction, he can not obtain any relief for any losses.

which he may have suffered through his unlawful enterprise. *Wright v. Cudahy,* 168 Ill. 86; *Oscanyan v. Arms Co.,* 103 U. S. 261; *Critchfield v. Bermudex,* 174 Ill. 466.

The agreement of Hagins with the Central Life Underwriting Association was a bargain and sale, by the delivery of which, with the guarantee of Nixon and Meyers, of the $43,000 in securities, the title to the latter passed to the association, and a delivery by the association of the secruities, properly assigned, upon a sufficient consideration, to the Western State Bank, vested the bank with the title thereto, superior to any claim of Hagins disclosed by his amended cross-bill.

The purpose and intention of the parties to the written agreement declared to exist by a verbal understanding between them, is repugnant to the principles of equity, and against public policy.

The demurrers to the cross-bill as secondly amended are well taken, and will be and are sustained, and the said cross-bill, as secondly amended, is hereby dismissed for want of equity, at the cost of cross-complainant.